J-S38014-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

IN RE: N.E.-M., A MINOR     :     IN THE SUPERIOR COURT OF
                                 :         PENNSYLVANIA
                                 :

APPEAL OF: M.P., NATURAL MOTHER   :
                                 :
                                 :
                                 :
                                 :
                                 :
                               :     No. 222 WDA 2018

Appeal from the Order Entered January 11, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000025-2016,
CP-02-AP-025-2016

BEFORE: BOWES, J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.:              FILED AUGUST 06, 2018

M.P. ("Mother") appeals from the order entered January 11, 2018 in the Court of Common Pleas of Allegheny County, that granted the petition of the Allegheny County Office of Children, Youth and Families ("CYF"), and involuntarily terminated her parental rights to her son, N.E.-M.[1] After careful review, we affirm.

N.E.-M. was born in February 2014. In addition to N.E.-M., Mother has two other sons with M.E.-M. ("Father"), A.E.-M. (born June 2010), and A.I.E.-M. (born July 2016). CYF became involved with N.E.-M. in June 2014, due to concerns about N.E.-M. receiving inappropriate medical care, his weight, failure to thrive, and possible neglect, as well as Mother's substance abuse

_____

[1] The order, which is dated December 15, 2017, also terminated the parental rights of the child's father, M.E.-M, who did not appeal.

_____

* Retired Senior Judge assigned to the Superior Court.

history. N.T., 7/21/17, at 130. CYF investigated and attempted to work with N.E.-M.'s family to ensure Mother and Father made and attended medical appointments, N.E.-M. gained appropriate weight, and the family followed through with all medical recommendations. Id. at 132. Subsequently, CYF became aware Mother was hospitalized in a coma. Id. at 132, 137. Based on prior concerns of domestic abuse, CYF scheduled a follow-up meeting with the family on August 8, 2014, to perform a safety assessment. Id. at 132-33. During the visit, the two caseworkers became concerned that Father was impaired as Father slurred his speech throughout the visit. Id. at 133. Father reported that he took several Xanax. Id. He appeared unresponsive to the children, as the caseworkers needed to repeatedly prompt Father to pay attention to N.E.-M., who was crying. Id. at 133-34. Further, N.E.-M. was underfed and Father made concerning comments regarding missed medical appointments. Id. As a result, CYF scheduled a doctor's appointment for the afternoon of August 8th. Id. at 134.

CYF staff took Father and N.E.-M. to the doctor's appointment. Id. at 135. The appointment revealed N.E.-M. had lost additional weight, and he needed to go to Children's Hospital to be admitted for an evaluation. Id. at 136. CYF offered to take Father and N.E.-M. to the hospital. Id. Father became resistant and angry. Id. He gave N.E.-M. to the CYF staff so they could transport N.E.-M. to the hospital. Id. at 137. Father left the room and became physically aggressive in the hallway. Id. Eventually, the police were called. Id. Due to safety concerns, CYF obtained an emergency custody

authorization, and transported N.E.-M. to the hospital. Id. The hospital admitted N.E.-M. for treatment. Id. On August 11, 2014, the trial court entered a shelter care order transferring legal and physical custody of N.E.-M. to CYF. The trial court adjudicated N.E.-M. dependent on September 24, 2014. N.E.-M. has not returned to Mother's care, and has resided in his current, pre-adoptive foster home since September 2015. Id. at 151.

On February 18, 2016, CYF filed a petition for the involuntary termination of Mother's and Father's parental rights to N.E.-M. By order dated May 24, 2017, the trial court appointed KidsVoice, the guardian ad litem appointed during the prior juvenile proceeding, as counsel for N.E.-M., then three years old. However, apparently in reaction to the child's subsequent statement to the court-appointed psychologist that he might like to visit his parents in their home, KidsVoice filed an emergency motion to withdraw from representation. On September 26, 2017, the trial court granted the motion summarily and appointed the Office of Conflict Counsel as legal counsel pursuant to 23 Pa.C.S. § 2313(a).

The trial court conducted hearings on CYF's petition on July 21, 2017, December 8, 2017, and December 15, 2017. CYF presented the testimony of, inter alia, Kaitlyn Leo, the CYF caseworker, and Patricia Pepe, Ph.D., the court-appointed psychologist who performed a series of psychological and interactional evaluations and issued six reports on the family. Mother did not testify. N.E.-M.'s counsel did not call any witnesses, but he cross-examined

CYF's witnesses and argued in favor of terminating Mother's parental rights.[2] By order dated December 15, 2017, and entered January 11, 2018, the trial court involuntarily terminated Mother's parental rights to N.E.-M. pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b).

Thereafter, on February 9, 2018, Mother filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).

_____

[2] Our recent jurisprudence obligates counsel appointed under § 2313(a) to inquire as to the preference of his client, and we typically vacate the termination decree and remand for additional proceedings when the certified record does not demonstrate that counsel has made a satisfactory effort to make that determination. See e.g., In re T.M.L.M., 184 A.3d 585 (Pa.Super. 2018) (remand for appointment of counsel due to attorney's failure to interview 6 year-old child to ascertain child's preferred outcome); In re Adoption of M.D.Q., __ A.3d __, 2018 WL 3322744 (Pa.Super. 2018) (remanded to determine preference of 6 year-old child); In re Adoption of D.M.C., __ A.3d __, 2018 WL 3341686 (Pa.Super. 2018) (remand to ensure representation of 14 year-old child's preference—telephone conversation was insufficient for attorney to determine preference and properly advocate for child's legal interests).

However, unlike each of the foregoing cases, where remand was necessary to determine the preferences of two 6 year olds and a teenager, it is unlikely that the three-year-old child in the case at bar is capable of providing any input about his preferred outcome in this case, much less actually articulating a preference in favor of preserving parental rights. Indeed, the only hint of a preference occurred when, in the presence of Mother and Father, three-year-old, N.E.-M. identified his foster parents as his "family," and noted a desire to visit Mother and Father at their home. In light of counsel's presumptive effectiveness and mindful that some of the supervised visitations had occurred at Mother's home, we do not interpret the child's isolated remark as indicative of a preference. Thus, we discern no reason to remand the case for further proceedings. See In re D.L.B., 166 A.3d 322, 329 (Pa. Super. 2017) (there is no conflict between a child's best and legal interests when child is unable to express preferred outcome).

Mother raises the following issue for review:

1. Did the trial court abuse its discretion and/or err as a matter of law in concluding that termination of . . .Mother's parental rights would serve the needs and welfare of [N.E.-M.] pursuant to 23 Pa.C.S. § 2511(b)[?]

Mother's brief at 6.

We review this claim mindful of our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

In re T.S.M., 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

- 5 -

In re L.M., 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." In re C.S., 761 A.2d 1197, 1201 (Pa.Super. 2000) (en banc) (quoting Matter of Adoption of Charles E.D.M. II, 708 A.2d 88, 91 (Pa. 1998)).

Instantly, Mother's argument only implicates the trial court's analysis pursuant to § 2511(b),[3] which provides as follows:

> (b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

This Court has stated that the focus in terminating parental rights under § 2511(a) is on the parent, but it is on the child pursuant to § 2511(b). See

_____

[3] Mother acknowledges CYF "did clearly and convincingly establish threshold grounds for termination pursuant to 23 Pa.C.S. §2511(a)(2)." Mother's brief at 16. Accordingly, Mother concedes CYF established, by clear and convincing evidence, "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." See 23 Pa.C.S. § 2511(a)(2).

In re Adoption of C.L.G., 956 A.2d 999, 1008 (Pa.Super. 2008) (en banc).

In reviewing the evidence in support of termination under § 2511(b), our Supreme Court has stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b).  The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability."  In re K.M., 53 A.3d 781, 791 (Pa. Super. 2012).  In In re E.M., [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child.  The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.  In re K.M., 53 A.3d at 791.

In re: T.S.M., supra at 267 (Pa. 2013).

> A parent's abuse and neglect are likewise a relevant part of this analysis:
>
> concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound.  If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feelings toward a parent, to establish a de facto beneficial bond exists.  The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

In re K.K.R.-S., 958 A.2d 529, 535 (Pa.Super. 2008) (internal citations and quotation marks omitted).  Thus, the court may emphasize the safety needs of the child.  In re K.Z.S., 946 A.2d 753, 763 (Pa.Super. 2008) (affirming

involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests). Indeed, "a parent's basic constitutional right to the custody and rearing of … her child is converted, upon the failure to fulfill … her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." In re B.,N.M., 856 A.2d 847, 856 (Pa.Super. 2004) (internal citations omitted).

Mother asserts that the trial court improperly utilized "fault-based and comparative analyses" with regard to its decision to terminate her parental rights pursuant to § 2511(b). Mother's brief at 21. She objects to the trial court referencing her compliance, or lack thereof, with court-ordered goals. Id. Mother also contends that the trial court improperly considered N.E.-M.'s relationship with his foster parents, and the perceived benefits of N.E.-M. remaining with his foster parents through adoption. Id. We disagree.

Here, the trial court considered Mother's compliance with her court-ordered goals in connection with the developmental, physical, and emotional needs and welfare of N.E.-M. With respect to supervised visitation, the trial court noted Mother's numerous missed visits, her lack of progress and parenting skills, safety issues that occurred during the visits, and Mother attending supervised visits with slurred speech or a lack of balance. Trial Court Opinion, 3/12/18, at 12-13. The trial court also discussed Mother's inability to independently schedule medical appointments, or to verbalize N.E.-M.'s medical history, or his educational and medical needs. Id. at 13.

Additionally, the trial court recounted Dr. Pepe's evaluations, including Dr. Pepe's conclusion that N.E.-M. has a significant bond with his foster parents and recognizes them as his primary and psychological parents. Id. at 14. The trial court also credited Dr. Pepe's testimony that N.E.-M. does not exhibit signs of a primary attachment to Mother. Id. The trial court concluded:

> Mother has been provided with ample resources to address parenting, domestic violence, mental health treatment, and drug and alcohol treatment. She has made minimal progress on each of her court ordered goals. Mother has not been consistent with mental health treatment or drug and alcohol treatment throughout the history of the case. Mother has not attended random drug screens consistently. She has engaged in domestic violence therapy sporadically. Mother has been unable to care for her own safety and has never been able to create a safe and stable environment for her child. She has never been able to make enough progress to have the child returned to her care. Mother does not possess the ability to parent her child or meet his basic needs. The child has a secure attachment and bond with his foster parents. He has been in care since his removal in August of 2014. The child deserves the comfort, support and permanency that his current foster home offers to him.

Trial Court Opinion, 3/12/18, at 14-15 (footnote omitted).

The certified record supports the trial court's conclusion that N.E.-M.'s developmental, physical, and emotional needs and welfare are served by terminating Mother's parental rights. N.E.-M. has not returned to Mother's care and has resided in his current foster home since September 2015. N.T., 7/21/17, at 151. As noted, the foster home is an adoptive resource. Id. N.E.-M. spontaneously provides affection to his foster parents, playing with them and offering hugs. N.T., 12/8/17, at 75. Kaitlyn Leo, the caseworker,

testified N.E.-M. calls his foster parents "mommy" and "daddy." Id. at 75-76. Ms. Leo observed a significant bond between N.E.-M. and his foster parents. Id.

Likewise, Dr. Pepe opined that N.E.-M. clearly considers his foster parents to be his primary and psychological parents. Id. at 133-34, 148. Although Dr. Pepe noted some bonding behavior between N.E.-M. and Mother, she testified that N.E.-M. made a good transition to his foster home, consistently interacted with his foster parents, and exhibited multiple bonding behaviors with his foster parents suggestive of a primary attachment. Id. at 122, 127. N.E.-M. appeared very happy and connected to his foster parents, and had a great deal of separation anxiety when they were not there. Id. at 127, 134. Dr. Pepe testified that when she asked N.E.-M. to draw a picture of his family, the picture clearly depicted him living with his foster parents. Id. at 146, Exhibit 6 at 17. After drawing the picture, N.E.-M. stated he has to stay with his foster parents, but wanted to visit Mother and Father. N.T., 12/8/17, at 146. Dr. Pepe opined N.E.-M. might wonder where his biological parents are at some point, but that it is more important for him to have permanency through adoption. Id. at 149. While N.E.-M. might miss Mother, Dr. Pepe did not believe termination of Mother's parental rights would cause severe psychological trauma. Id. at 150. Conversely, Dr. Pepe opined N.E.-M. would be deeply and negatively impacted if he were removed from his foster parents. Id. at 155.

While Mother argues the trial court erred by inappropriately undertaking a fault-based analysis, this Court has recently held:

> [f]inally, we reject Mother's assertion that the orphans' court placed an undue emphasis on her failings as a parent. Mother is correct that Section 2511(b) focuses on the welfare of Child, and not Mother's parental incapacity. However, it is beyond cavil that Mother's incapacity, and the likelihood that she will never remedy that incapacity, which she has conceded, is an important consideration when determining what is best for Children. See C.D.R., 111 A.3d at 1220 (citing In re Adoption of M.E.P., 825 A.2d 1266, 1276 (Pa. Super. 2003) ) ("Clearly, it would not be in Child's best interest for his life to remain on hold indefinitely in hopes that Mother will one day be able to act as his parent.").

In re G.M.S., ___ A.3d ___, 2018 WL 3371967 at *6 (Pa.Super. filed July 11, 2018).

Here, Mother has similarly conceded her parental incapacity, and the trial court appropriately considered Mother's actions in evaluating whether involuntarily terminating Mother's parental rights serves N.E.-M.'s needs and welfare. With regard to Mother's argument that the trial court improperly engaged in a comparative analysis with respect to N.E.-M.'s relationship with his foster parents, we again discern no abuse of discretion or error of law. To the contrary, our Supreme Court has explained that a child's relationship with his or her pre-adoptive foster parents is an important part of the § 2511(b) analysis. T.S.M., supra at 268 ("Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents."). Based on the foregoing, we conclude the trial court did not abuse its discretion

or commit an error of law by involuntarily terminating Mother's parental rights

to N.E.-M.  Therefore, we affirm the trial court's order.


Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  8/6/2018